IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JUAN CARLOS CORTEZ-CONTRERAS BOP Reg. # 16418-003, Movant, v. UNITED STATES OF AMERICA, Respondent. | ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 17-00278-WS CRIMINAL ACTION NO. 16-00134-WS-N |

## REPORT AND RECOMMENDATIONS

Juan Carlos Cortez-Contreras, a federal prisoner proceeding *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 33[1]) and supporting brief (Doc. 34). The motion has been referred to the undersigned Magistrate Judge, who is authorized under S.D. Ala. GenLR 72(a)(1) and (2)(R) to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of these proceedings brought under 28 U.S.C. § 2255, in accordance with 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts. *See* S.D. Ala. GenLR 72(b); (6/19/2017 electronic reference).

As ordered under Rule 4(b) of the Rules Governing Section 2255 Proceedings (*see* Doc. 35), the Government has timely filed a response (Doc. 37) in opposition to Cortez-Contreras's § 2255 motion. Though given the opportunity, Cortez-Contreras

---

[1] All "Doc." citations herein refer to the docket of the above-styled criminal action.

has not submitted a reply to the response, and the deadline to do so, August 29, 2017, has passed. (*See* Doc. 35).[2]

Having reviewed the parties' submissions in accordance with Rule 8(a) of the Rules Governing Section 2255 Proceedings, the undersigned finds that an evidentiary hearing is not warranted and that Cortez-Contreras's § 2255 motion (Doc. 33) is due be **DENIED** and **DISMISSED with prejudice**.

## I. *Background*

On July 27, 2016, the grand jury of this district returned a 2-count indictment against Cortez-Contreras. (Doc. 1 filed "07/27/2016"). On September 19, 2016, Cortez-Contreras, represented by appointed counsel and pursuant to a written plea agreement (Doc. 21), pled guilty to Count 1 of the indictment, which charged an offense illegal reentry after deportation or removal in violation of 8 U.S.C. §§ 1326(a) and (b)(2). (*See* Doc. 22).

The final Presentence Investigation Report ("PSR") (Doc. 28) prepared by the U.S. Probation Office assigned Cortez-Contreras a total offense level of 21 and a criminal history category of III, resulting in a guideline imprisonment range of 46 to

---

[2] Since the expiration of his deadline to reply, Cortez-Contreras has twice written the Court requesting a copy of the docket sheet for this case, and both requests were honored. (*See* Docs. 39, 40, 41). The docket notation for the briefing schedule order clearly states: "USA is ordered to file and serve a response by 7/18/2017 to 2255 Motion. Defendant is ordered to file and serve a reply by 8/29/2017 as set out" (Doc. 35), and the docket sheet shows that the Government's response was timely filed (*see* Doc. 37). Moreover, Cortez-Contreras has maintained the same mailing address at the D. Ray James Correctional Institution in Folkston, Georgia, since he initiated these § 2255 proceedings, and no copy of the docket sheet or a court order mailed to Cortez-Contreras has been returned as undeliverable. Accordingly, at this time the undersigned finds no reason to believe that Cortez-Contreras has not been served with the various filings in this case, or that he is unaware of the deadline for submitting a reply.

57 months. On December 7, 2016, the Court sentenced Cortez-Contreras to 46 months of imprisonment, to be followed by 3 years of supervised release and immediate delivery to immigration authorities for possible deportation, and $100 special assessment. (*See* Doc. 31). Cortez-Contreras took no direct appeal of his conviction or sentence.

## II. *Legal Standards*

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014). Specifically, § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence ... If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a)-(b).

"Once the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a

federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* at 1232 (internal citations, quotations, and footnote omitted).

> Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron*[ *v. United States*], 291 F.3d [708,] 715[ (11th Cir. 2002)] (quoting *Holmes v. United States,* 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes,* 876 F.2d at 1553 (quoting *United States v. Guerra,* 588 F.2d 519, 520–21 (5th Cir. 1979)); *see, e.g., Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the ... affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted). *Accord, e.g., Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015). The Court must "liberally

construe *pro se* filings, including *pro se* applications for relief pursuant to § 2255." *Winthrop-Redin*, 767 F.3d at 1215.

### III. *Analysis*

### A. Grounds for Relief

Cortez-Contreras asserts two grounds for relief under § 2255, both alleging ineffective assistance of trial counsel at sentencing. The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). "[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Id.* at 504. *See also United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255." (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))), *cert. denied*, 134 S. Ct. 962 (2014).

"To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694).

"'Conclusory allegations of ineffective assistance are insufficient.'" *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted). *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."). "The *Strickland* test is not easily met; … 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson*, 256 F.3d at 1176 (quoting *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters*, 46 F.3d at 1518. *Accord, e.g., Burt v. Titlow*, 134 S. Ct. 10, 18 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance…"). "A lawyer can almost always do something more in every case. But the Constitution requires a

good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).

> In evaluating the first, or "performance," prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence," we have held that in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).
>
> Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002).

Cortez-Contreras's first claim is that his counsel was ineffective for failing to object to the PSR's use of the 2015 Guidelines Manual in calculating his offense level. More specifically, he claims that counsel should have objected to the PSR's use of the 2015 Manual's version of United States Sentencing Guideline § 2L1.2, the pertinent guideline for calculating the offense level for his conviction under 8 U.S.C. § 1326. (*See* Doc. 28 at 5, ¶ 17 ("The 2015 Guidelines Manual, incorporating all guideline amendments, was used to determine the defendant's offense level. U.S.S.G. §1B1.11.")). In its response, the Government acknowledges that U.S.S.G. § 2L1.2 was "substantially altered" by revisions effective November 2016, and it concedes that "the new guideline should have been used since sentencing occurred in December 2016." (Doc. 37 at 4). However, the Government argues that Cortez-Contreras was not prejudiced by this error because his total offense level would have been the same under the version of § 2L1.2 effective November 2016. The Government is correct.

Under either version of § 2L1.2(a), Cortez-Contreras's base offense level was 8. The 2015 version of § 2L1.2(b) states as follows:

> Specific Offense Characteristic
>
> (1) Apply the Greatest:
>
> If the defendant previously was deported, or unlawfully remained in the United States, after—
>
> > (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by **16** levels if

the conviction receives criminal history points under Chapter Four or by **12** levels if the conviction does not receive criminal history points;

(B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by **12** levels if the conviction receives criminal history points under Chapter Four or by **8** levels if the conviction does not receive criminal history points;

(C) a conviction for an aggravated felony, increase by **8** levels;

(D) a conviction for any other felony, increase by **4** levels; or

(E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by **4** levels.

In reaching a total offense level of 21, the PSR applied a 16-level enhancement under § 2L1.2(b)(1)(A) (2015), and a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

The version of § 2L1.2(b) effective November 2016 states:

Specific Offense Characteristics

(1) (Apply the Greater) If the defendant committed the instant offense after sustaining—

(A) a conviction for a felony that is an illegal reentry offense, increase by **4** levels; or

(B) two or more convictions for misdemeanors under 8 U.S.C. § 1325(a), increase by **2** levels.

(2) (Apply the Greatest) If, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant sustained—

(A) a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five years or more, increase by **10** levels;

(B) a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was two years or more, increase by **8** levels;

(C) a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed exceeded one year and one month, increase by **6** levels;

(D) a conviction for any other felony offense (other than an illegal reentry offense), increase by **4** levels; or

(E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by **2** levels.

(3) (Apply the Greatest) If, at any time after the defendant was ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct resulting in—

(A) a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five years or more, increase by **10** levels;

(B) a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was two years or more, increase by **8** levels;

(C) a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed exceeded one year and one month, increase by **6** levels;

(D) a conviction for any other felony offense (other than an illegal reentry offense), increase by **4** levels; or

(E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by **2** levels.

The Government correctly points out that, if the PSR had applied this version of § 2L1.2(b), Cortez-Contreras would have qualified for a 6-level increase under § 2L1.2(b)(2)(C) because, prior to being ordered removed from the United States for

the first time in 2001 (*see* Doc. 21 at 11 [Plea Agreement Factual Resume]), he had sustained a 1999 felony conviction for fourth degree attempted criminal possession of a weapon, for which he was sentenced to 18 months of imprisonment. (*See* Doc. 28 at 6, ¶ 30). The Government is also correct that Cortez-Contreras would have further qualified for a 10-level increase under § 2L1.2(b)(3)(A) because, after his first removal in 2001, he sustained two 2010 felony convictions for drug offenses, for which he received concurrent imprisonment sentences of 10 years each. (*See* Doc. 28 at 7, ¶ 32). Because U.S.S.G. § 3E1.1 was unaltered from the 2015 Guidelines Manual at the time of his sentencing, Cortez-Contreras would have still received the same 3-level reduction for acceptance of responsibility. Thus, even under the version of § 2L1.2 effective November 2016, his total offense level would have been 21. Therefore, Cortez-Contreras was not prejudiced by application of the old version of § 2L1.2.

Cortez-Contreras's second claim is that his trial counsel was ineffective for failing to object to the PSR's statement of the sentence he received from his 2010 drug convictions, claiming he "only had a sentence of 2 years not a sentence of 10 years as P.S.R. reported." (Doc. 34 at 2).[3] He claims this is apparent because the PSR also notes that he was deported much less than 10 years after the sentence was imposed, and "it is ilogical [sic] that 20 days after the sentence date he was deported to Mexico with a sentence of 10 years." (Doc. 34 at 2).

---

[3] If this were true, then Cortez-Contreras would not have been eligible for a 10-level enhancement under § 2L1.2(b)(3)(A) (Nov. 2016), but only an 8-level enhancement under § 2L1.2(b)(3)(B). (*See* Doc. 28 at 7, ¶ 31).

Cortez-Contreras's trial counsel actually did address this issue prior to sentencing. In describing the 2010 convictions, the draft PSR described the "date sentence imposed/ disposition" as follows: "08/03/2011: 1-2) Guilty; sentenced to 10 years. 08/23/2011: Defendant was deported on this date." (Doc. 24 at 7, ¶ 32). In her written objections to the draft PSR, trial counsel argued:

> As to ¶ 32, Cortez-Contreras asserts that although the certified criminal record of conviction shows that he received a 10-year sentence, he disputes that he did, and further states that he pled guilty and was sentenced to an amended charge. Cortez-Contreras does not have any further evidence of his position, but he does note that, as articulated in the PSR, following the pronouncement of the supposed 10-year sentence, he was deported 20 days later, and nowhere near 10 years after sentencing.

(Doc. 27 at 2). In its addendum to the final PSR, the Probation Office noted that objection and responded as follows:

> According to court documents, the defendant pled guilty to Possession with Intent to Distribute Cocaine (1st Offense – 10-GS-24-481) and Possession with Intent to Distribute Cocaine in Proximity (10-GS-24-482). The defendant received 10 years custody on each conviction, to run concurrently. The defendant was sentenced on July 30, 2010, which falls within the 15-year time frame for U.S.S.G. §4A.1(a). Based on the sentencing order, the criminal history points applied in paragraph 32 were appropriately applied and the presentence report remains unchanged in that aspect. However, the probation officer received collateral information after the presentence report was initially disclosed, thereby the counts of convictions, arrest dates and sentencing dates have been modified in paragraph 32.

(Doc. 29 at 1). After those modifications, the final PSR described the "date sentence imposed/ disposition" for the 2010 convictions as follows: "07/30/2010: 1-2) Guilty;

sentenced to 10 years custody on each count, to run concurrent. 08/23/2011: Defendant was deported on this date." (Doc. 28 at 7, ¶ 32).

In its statement of reasons accompanying the written judgment, the Court stated that it had adopted the PSR "without change." (Doc. 32 at 1). Because a transcript of the sentencing hearing is not in the record, the undersigned cannot determine whether the Court overruled Cortez-Contreras's objection, or whether his counsel withdrew the objection at sentencing. However, counsel's objection noted that "the certified criminal record of conviction shows that he received a 10-year sentence." Therefore, the record indicates that trial counsel, acting on Cortez-Contreras's concerns, diligently acted to ascertain whether the 10-years sentence noted for the 2010 convictions in the draft PSR was correct, confirmed through certified court records that it was, but nevertheless still presented Cortez-Contreras's position on the issue in her written objections. The Probation Office considered that objection and also confirmed the 10-year sentence after consulting "court documents."

Cortez-Contreras has presented no evidence, nor alleged any specific facts, to support his claim that he only received a 2-year sentence for his 2010 convictions. Thus, he has failed to show that trial counsel could have done anything more in presenting this claim to the Court prior to sentencing. Instead, it appears, as the Government suggests, that Cortez-Contreras actually served only a part of the 10-year sentence before being released early and deported. As the Government correctly notes, for purposes of § 2L1.2(b) (Nov. 2016), the "sentence imposed"

"refers to the maximum sentence imposed[,]" "not the length of time actually served." *See* U.S.S.G. § 2L1.2 cmt. n.2; § 4A1.2(b) & cmt. n.2.

Accordingly, the undersigned finds it is clear from the record that both of Cortez-Contreras's claims of ineffective assistance of counsel at sentencing are without merit, and that his § 2255 motion is therefore due to be **DENIED** and **DISMISSED with prejudice**, without an evidentiary hearing.

### B. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in a § 2255 proceeding. Rule 11(a) of the Rules Governing § 2255 Proceedings. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C.A. § 2253(c)(1)(A).

"A certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' " *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)). Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate

whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).). "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted). However, "a COA does not require a showing that the appeal will succeed." *Id.* at 337.

Upon consideration, the undersigned finds that Cortez-Contreras should be **DENIED** a Certificate of Appealability as to the present § 2255 motion, as reasonable jurists would not debate whether his § 2255 motion should be resolved in a different manner or that any of the issues presented is adequate to deserve encouragement to proceed further.[4]

### C.     Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  28 U.S.C. § 1915(a)(3).

---

[4]     Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by the petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011); *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

Should the Court adopt this recommendation and deny a certificate of appealability, the movant "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

> A party demonstrates good faith by seeking appellate review of any issue that is not frivolous when examined under an objective standard. *See Coppedge v. United States,* 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962). An issue is frivolous when it appears that "the legal theories are indisputably meritless." *Carroll v. Gross,* 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted). In other words, an IFP action is frivolous, and thus not brought in good faith, if it is *860 "without arguable merit either in law or fact." *Bilal v. Driver,* 251 F.3d 1346, 1349 (11th Cir. 2001). More specifically, "arguable means capable of being convincingly argued." *Sun v. Forrester,* 939 F.2d 924, 925 (11th Cir. 1991) (internal quotations and citations omitted). Nevertheless, where a "claim is arguable, but ultimately will be unsuccessful," it should be allowed to proceed. *Cofield v. Ala. Pub. Serv. Comm'n,* 936 F.2d 512, 515 (11th Cir. 1991).

*Ghee v. Retailers Nat. Bank,* 271 F. App'x 858, 859-60 (11th Cir. 2008) (per curiam) (unpublished).

Having considered the issues raised as set forth above, the undersigned **RECOMMENDS** the Court certify that any appeal by Cortez-Contreras of the dismissal of the present § 2255 motion would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal *in forma pauperis*.[5]

## IV. *Conclusion*

In accordance with the foregoing analysis, it is **RECOMMENDED** that Cortez-Contreras's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Docs. 33, 34) be **DENIED** and **DISMISSED with prejudice**. It is further **RECOMMENDED** that the Court find Cortez-Contreras not entitled to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

---

[5] Should the Court adopt this recommendation and deny leave to appeal *in forma pauperis*, the petitioner may file a motion to proceed on appeal *in forma pauperis* with the Eleventh Circuit Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(5).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts; S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 14th day of February 2018.

/s/ *Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**